MICHAEL FLYNN *vs.* THE ASSOCIATED PRESS & another.[1]

Middlesex. January 5, 1988. — March 7, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Libel and Slander. Limitations, Statute of.*

A cause of action for libel accrued at the time of the publication in 1978 of a
   defamatory article in a newspaper widely available to the public, includ-
   ing the plaintiff; therefore, even though the plaintiff did not discover
   the existence of the article until 1984, a claim filed in 1986 was barred
   by the three-year statute of limitations. [780-782]
Claims of infliction of emotional distress, invasion of privacy and violation
   of civil rights filed in 1986 were barred by the three-year statute of
   limitations even though the plaintiff did not discover the defamatory
   newspaper article on which his claims were based until 1984, in cir-
   cumstances where neither the article, published in 1978 in a newspaper
   widely available to the public, including the plaintiff, nor the alleged
   harm was inherently unknowable in 1978. [782]

CIVIL ACTION commenced in the Superior Court Department
on September 19, 1986.

The case was heard by *Hiller B. Zobel,* J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Damon Scarano* for the plaintiff.

*Francis H. Fox* (*Jonathan M. Albano* with him) for The
Associated Press.

*James C. Heigham* (*Brian A. Davis* with him) for The St.
Louis Post-Dispatch.

ABRAMS, J. We transferred the plaintiff's appeal to this court
on our own motion to consider whether his claims of libel, in-
fliction of emotional distress, invasion of privacy, and violation

---

[1] The St. Louis Post-Dispatch.

of civil rights under G. L. c. 12, §§ 11H and I (1986 ed.), are barred by the applicable three-year statutes of limitations. G. L. c. 260, §§ 2A and 4 (1986 ed.). A judge in the Superior Court determined that the claims were so barred and granted the defendants' motions for summary judgment. See Mass. R. Civ. P. 56, 365 Mass. 824 (1974). The plaintiff, Michael Flynn, appeals. We affirm.

We summarize the facts. Flynn graduated from Concord-Carlisle Regional High School on June 2, 1978. Racial tensions ran high at the school in 1977-1978. During that year, Flynn, who is white, became involved in an altercation with a black student. Late in June, 1978, the two young men fought a second time. The local press reported the latter incident, and a number of reports linked the fight to racial problems at the school. Flynn's grandfather collected many of the media reports. Flynn felt that he was wronged by incorrect reporting of the incident. Flynn discussed the newspaper articles with his father and considered — but rejected — the option of taking legal action against the publishers of the articles he saw in 1978.

One publication Flynn did not see was an article by The Associated Press (AP) staff writer Arnold Zeitlin. Zeitlin's article centered on racial problems at Concord-Carlisle Regional High School during the 1977-1978 school year. The article reported that thirty-six black students who attended Concord-Carlisle pursuant to the Metropolitan Council for Educational Opportunity (Metco) school integration plan decided to withdraw from the program because of racial threats from white students. The article reported Flynn's June fight and suggested that the incident was racially motivated. In addition, the article stated, "Flynn was one of six students who identified themselves with the Ku Klux Klan in the [school] yearbook."

On July 20, 1978, Zeitlin's article was transmitted over the AP wire service throughout the country to member newspapers and broadcasters who are free to use some, all, or none of what they receive from AP. At least two newspapers, The St. Louis Post-Dispatch (Post-Dispatch) and the Boston Herald American (Herald American), ran the article, or portions of

it, including the false statements portraying Flynn as a racist and member of the Ku Klux Klan.

The Herald American published portions of the AP article in the July 21, 1978, suburban edition under the headline, "Concord-Carlisle: Racism, fear." The Herald American was a daily newspaper and its suburban edition was distributed widely throughout eastern Massachusetts, including Concord, Flynn's home town. Flynn, however, did not see the article when it appeared in the Herald American; he was in New Hampshire during July and his father, who worked in Boston, purchased the July 21 Herald American city edition, which did not carry the story. Flynn also did not see the AP article when it appeared in the Post-Dispatch on July 30, 1978.[2]

Even though Flynn did not see the AP article in the summer of 1978, he was aware at the time that his fight had caused widespread publicity. He also was aware in 1978 that the press had drawn a connection between the incident and racial tensions at Concord-Carlisle. In addition, Flynn knew that there was a great deal of public concern about references to the Ku Klux Klan in the 1978 Concord-Carlisle high school yearbook. He believed in 1978 that his fight, coupled with publicity about the references to the Ku Klux Klan in the yearbook, caused people to think that he was part of the Ku Klux Klan. The publicity damaged Flynn's reputation in the community and adversely affected his relationships with several individuals in 1978.

It is undisputed that Flynn never has had any affiliation with the Ku Klux Klan. It also is undisputed that Flynn's picture and biography did not appear in the yearbook. The statements concerning Flynn were false and damaging, and a jury would have been warranted in concluding that the statements were libelous.

---

[2] At all times relevant to this case, the Post-Dispatch had a daily circulation of approximately 300,000. Only thirty copies of the paper were sent regularly to Massachusetts, and all were mailed to private subscribers. No copies of the Post-Dispatch were available at newsstands in Massachusetts.

By 1981, Flynn believed that the effect of the 1978 media reports about him had "blown over." In August of 1981, however, he read in Rolling Stone magazine, a national publication, an article entitled "The Ku Klux Kids." The article, which appeared in the July, 1981, issue of the magazine, discussed Ku Klux Klan activities in schools around the country and reproduced the false statement linking Flynn to the Ku Klux Klan.

In September of 1982, Flynn sued the publisher of Rolling Stone for libel, infliction of emotional distress, and invasion of privacy. On September 21, 1984, during a deposition in that action, Flynn learned that Rolling Stone had based its statements about him on the AP article published in the July 30, 1978, issue of the Post-Dispatch. Flynn claims that he became aware of the AP article for the first time at this deposition.[3]

On September 19, 1986, Flynn filed his complaint in the present action. The defendant AP moved for summary judgment on the ground that Flynn's claims were barred by the three-year statute of limitations for libel and tort actions. The defendant Post-Dispatch moved for dismissal or, in the alternative, summary judgment on the same ground.[4] After hearing, the Superior Court judge entered summary judgment in favor of both defendants.

[3] The action against Rolling Stone resulted in a settlement and voluntary dismissal before trial.

[4] In addition to arguing that the plaintiff's claims are barred by the statute of limitations, the defendant Post-Dispatch argues that it lacks sufficient "minimum contacts" with Massachusetts to confer personal jurisdiction under G. L. c. 233A, § 3, the "long arm statute." See note 2, *supra*. The Post-Dispatch raised both arguments below, and renews both on appeal. The Superior Court judge apparently assumed personal jurisdiction was proper in Massachusetts and disposed of the case in the Post-Dispatch's favor based on the statute of limitations. Without deciding the constitutional issue raised in the defendant's jurisdiction argument, we also assume personal jurisdiction is proper. In so doing, we note that the reasoning of the United States Supreme Court's decision in *Calder* v. *Jones,* 465 U.S. 783, 789-791 (1984), undermines the Post-Dispatch's argument that a newspaper defendant cannot be held to have "minimum contacts" with a libel plaintiff's home State based solely on the circulation of a small number of papers in that State.

On appeal, Flynn argues that his claims are not barred by the statute of limitations.[5] Flynn points out that he was a minor in July, 1978,[6] and contends that he neither knew nor should have known of the existence of the defamatory AP article at that time. He argues that the discovery rule applies to his claims, and that, under the discovery rule, his several causes of action did not accrue until September 21, 1984, the date he actually discovered the AP article. We do not agree.

1. *The libel claim.* The parties agree that the statute of limitations applicable to Flynn's libel claim is G. L. c. 260, § 4, which provides in relevant part: "Actions for . . . libel . . . shall be commenced only within three years next after the cause of action accrues." In determining when a cause of action "accrues," we are guided by the principle that "a cause of action accrues on the happening of an event likely to put the plaintiff on notice." *Hendrickson* v. *Sears,* 365 Mass. 83, 89-90 (1974), and cases cited. See *White* v. *Peabody Constr. Co.,* 386 Mass. 121, 128-129 (1982); *Franklin* v. *Albert,* 381 Mass. 611, 618 (1980). "The 'notice' required is not notice of every fact which must eventually be proved in support of the claim. . . . Rather, 'notice' is simply knowledge that an injury has occurred." *White* v. *Peabody Constr. Co., supra* at 130. In libel cases, the general rule is that the cause of action accrues, and the statute of limitations begins to run, on publication of the defamatory statement. *Polchlopek* v. *American News*

---

[5] Flynn also asserts that, if the statute of limitations bars the present action, any future republication of the defamatory statements about him will be immune from suit. This contention is unfounded. "[T]he republisher of a defamatory statement 'is subject to liability as if he had originally published it.'" *Appleby* v. *Daily Hampshire Gazette,* 395 Mass. 32, 36 (1985), and sources cited. Any future republication of the false statements complained of in this action could form the basis for a new cause of action against the republisher.

[6] The fact that Flynn was a minor in July, 1978, does not alter the result in this case. Plaintiffs who are minors are protected by tolling of the statute of limitations until they attain their majority. G. L. c. 260, § 7 (1986 ed.). *Harris* v. *Wilcox,* 384 Mass. 57 (1981). Flynn's minority could delay accrual of his claims only until he became eighteen, which he did on September 2, 1978, the day before the anniversary of his birth. See *Apkin* v. *Treasurer & Receiver Gen., ante* 427, 428 n.3 (1988).

*Co.,* 73 F. Supp. 309 (D. Mass. 1947). *McGlue* v. *Weekly Publications, Inc.,* 63 F. Supp. 744 (D. Mass. 1946). See 50 Am. Jur. 2d, Libel and Slander § 390, and cases cited (1970 & 1987 Supp.).

Flynn seeks to avoid the general rule and to bring his claim "within the so called discovery rule under which certain causes of action based on inherently unknowable wrongs do not accrue until the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct. This rule has been applied in a variety of settings. See, e.g., *Franklin* v. *Albert, supra* (medical malpractice); *Friedman* v. *Jablonski,* 371 Mass. 482 (1976) (deceit in sale of real estate); *Hendrickson* v. *Sears,* [*supra*] (negligent certification of title to real estate by attorney)." *White* v. *Peabody Constr. Co., supra* at 129. The discovery rule applies only to "inherently unknowable" causes of action. *Id.* at 130. *Hendrickson* v. *Sears, supra* at 87. See *Gore* v. *Daniel O'Connell's Sons,* 17 Mass. App. Ct. 645, 647-649 (1984), and cases cited.

The record in this case does not establish that Flynn's cause of action was inherently unknowable in 1978. Flynn alleges libel in a news report disseminated nationally by AP on July 20, 1978. The defamatory portions of the story were printed in the July 21, 1978, Herald American, suburban edition, a newspaper widely available in Flynn's home town of Concord. The discovery rule does not apply to a public libel printed in a newspaper widely available to the public, including the plaintiff. See, e.g., *Fleury* v. *Harper & Row, Publishers, Inc.,* 698 F.2d 1022, 1028-1029 n.4 (9th Cir.), cert. denied, 464 U.S. 846 (1983); *Morgan* v. *Hustler Magazine, Inc.,* 653 F. Supp. 711, 717 (N.D. Ohio 1987); *McGuiness* v. *Motor Trend Magazine,* 129 Cal. App. 3d 59, 62-63 & n.2 (1982); *Holloway* v. *Butler,* 662 S.W.2d 688, 693 (Tex. App. 1983). See also *Brown* v. *American Broadcasting Co.,* 704 F.2d 1296, 1300 (4th Cir. 1983) (broadcasts); *Tom Olesker's Exciting World of Fashion, Inc.* v. *Dun & Bradstreet, Inc.,* 61 Ill. 2d 129, 137-138 (1975) (distinguishing confidential communications).

Thus, there is no reason to apply the discovery rule in this case.[7]

2. *The other claims*. In the absence of a specific legislative provision to the contrary, Flynn's claims for infliction of emotional distress, invasion of privacy, and violation of civil rights all are governed by G. L. c. 260, § 2A, the general three-year statute of limitations for tort actions. In order to determine when these claims accrued, we again look for "an event likely to put the plaintiff on notice." *Hendrickson* v. *Sears, supra* at 89. See *supra* at 780. We also look to the " 'gist of the action' or the essential nature of the plaintiff's claim" because "limitations statutes should apply equally to similar facts regardless of the form of [the] proceeding." *Hendrickson, supra* at 85.

Flynn's claims of harm all are based on publication of the AP article. As discussed above, neither the harm nor the article was "inherently unknowable" in 1978. On this record, we discern no reason to apply to Flynn's alternative theories of recovery an accrual rule different from the rule we apply to his libel claim. See *Lashlee* v. *Sumner,* 570 F.2d 107, 108-109 (6th Cir. 1978). The judge properly granted the defendants' motions for summary judgment.

*Judgment affirmed.*

---

[7] This is not a case involving either concealment or confidential communication. The defendant AP transmitted defamatory statements about Flynn to member publishers and broadcasters, and at least one newspaper readily available to Flynn printed the story.