Gants, J.
In 1988, Edward Bernays (“Mr. Bernays”), then 97 years old, hired the plaintiff, Joan Vondra (“Vondra”), to serve as his caretaker. On September 29, 1993, after concerns were raised about Mr. Bernays’ competency, Judge William Highgas of the Middlesex County Probate Court appointed the defendant Linda Kaloustian (“Kaloustian”) to serve as Mr. Bernays’ *281 guardian ad litem (“GAL”) and directed her to prepare a guardian ad litem report (“the GAL Report”). Kaloustian conducted an investigation into Mr. Bemays’ situation, which included inquiry into various allegations that had been made against Vondra regarding her purported misuse other caretaker responsibilities. On December 1, 1993, Kaloustian submitted her 103-page GAL Report to Judge Highgas. Although the Report was declared confidential by Judge High-gas, a copy came into the possession of the defendant Larry Tye (“Tye”), who was writing a biography of Mr. Bernays entitled, “Edward L. Bernays: Father of Spin,” detailing Mr. Bemays’ prominent career in public relations. Tye’s biography, which was first published in October 1998, included certain information from the GAL Report: Tye specifically cited the Report as his source in more than twenty footnotes.
Vondra claims that two statements in Tye’s biography of Mr. Bernays, both of which cited the GAL Report as their source, are false and defamatory. First, at page 231, Tye wrote:
It was their fear of financial finagling that first got Eddie’s daughters [the defendants Doris Bernays Held (“Held”) and Anne Bernays Kaplan (“Kaplan”)] worried. Anne received a call from a vice president at Sotheby’s auction house saying that Joan wanted to sell all of Eddie’s artwork, his furniture, and even his house.
Second, at page 233, Tye wrote:
The FBI was called in to work with the Cambridge police. A private investigator searched Joan’s room and, according to Doris, found “a dildo, marijuana pipe, empty wine bottles, and vague pornography.”[1]
In her complaint, Vondra alleges five counts, each brought against all of the defendants:
1. Defamation for the two purportedly false statements made in the GAL Report that were republished in Ttye’s biography:
2. Invasion of privacy for republishing confidential information contained in the GAL Report;
3. Violations of the Massachusetts Civil Rights Act; G.L.c. 12, §§11H and 111, and G.L.c. 93, §102;
4. Intentional infliction of emotional distress; and
5. Malicious interference with her contractual rights to the confidentiality of the GAL Report.
The defendants Held, Kaplan, and Kaloustian, as well as Sotheby’s and Pat Ward, now move for summary judgment as to all five counts. After hearing and for the reasons stated below, these defendants’ motions for summary judgment are ALLOWED.
DISCUSSION
This Court will consider the counts in reverse order.

Count Five: Malicious Interference with Contractual Rights

The defendants are entitled to summary judgment on Count Five for at least two reasons. First, Vondra has no contractual right to the confidentiality of the GAL Report, and therefore cannot bring an action for any breach of that confidentiality. Second, even if Vondra were entitled to bring such a claim, she has presented no evidence that Held, Kaplan, Sotheby’s, Ward, or Kaloustian breached the order of confidentiality by providing a copy of the GAL Report to Tye or by assisting another to provide Tye with a copy.
Even if this Court were to interpret this claim to allege tortious interference with Vondra’s employment relationship with Mr. Bemays (which is not how the claim is characterized in Vondra’s complaint), it would still be of no avail to Vondra. There is no dispute that:
Vondra was terminated from her employment in August 1993,
Vondra knew that Held and Kaplan were responsible for her termination at the time,
even if she did not know then all that Held and Kaplan had done to cause her termination, she would have learned in detail what they did no later than July 1994, because Vondra admitted that, by then, she had read the GAL Report; and
Vondra did not file suit in this action until 2001.
Even with the most liberal interpretation of the discovery rule, the limitations period for Vondra to bring a tortious interference with contract claim based on these allegations expired by July 1997. Therefore, if this Court were to interpret this claim to focus on the role Mr. Bernays’ daughters played in firing Vondra as Mr. Bemays’ caretaker, any claim based on this theory would be barred by the statute of limitations.

Count Four: Intentional Infliction of Emotional Distress

The defendants are also entitled to summary judgment on Count Four. Since Vondra has no evidence that either Held, Kaplan, Sotheby’s, Ward, or Kaloustian were responsible for the dissemination of the GAL Report to Ttye, they cannot be found to have intentionally inflicted emotional distress upon her by causing the publication of information in the GAL Report.
There is, however, evidence from Tye’s biography that Held spoke to Tye in 1996 and told him what she contended the private investigator had found in Vondra’s room at Mr. Bemays’ residence. Even assuming that Held furnished Ttye with this information, there can be no dispute that Held was reciting information that had already been provided to the GAL, which the GAL had included in her December 1, 1993 Report. Since Vondra obtained a copy of the GAL Report in the first half of 1994, and would have learned then of what Held had said about the results of the private investigator’s search of her room, any claim *282 that Held intended to inflict emotional distress upon Vondra by falsely reporting what the private investigator had found should have been brought no later than July 1997.
Moreover, to prevail on a claim of intentional infliction of emotional distress, Vondra must show that “the defendant’s conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.” Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997), quoting Payton v. Abbott Labs, 386 Mass. 540, 555 (1982). This Court, in the context of the unusual events in this case, finds as a matter of law that telling an author about a private investigator’s search of Vondra’s room, after that same information had been provided to the GAL for her Report, does not meet the demanding standard required to satisfy this essential element.

Count Three: Violations of the Massachusetts Civil Rights Act

Under the Massachusetts Civil Rights Act (“the Act”):
Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth has been interfered with, or attempted to be interfered with [by threats, intimidation or coercion] may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief . . . including the award of compensatory money damages . . .
G.L.c. 12, §§llHand 1II. The Supreme Judicial Court has described the legislative purpose behind the passage of this Act in 1979:
The Legislature passed this statute to respond to a need for civil rights protection under State law. Deprivations of secured rights by private individuals using violence or threats of violence were prevalent at the time that the Legislature considered G.L.c. 12, §§ 11H and 11I.. . Aggrieved parties often could not succeed under 42 U.S.C. §1983 . . . because the Federal statute requires “State action”
. . . The statute encompassed private action where otherwise “State action” would be required . . . We conclude that the Legislature intended to provide a remedy under G.L.c. 12, §§1 II, coextensive with 42 U.S.C. §1983 . . ., except that the Federal statute requires State action whereas its State counterpart does not. . .
Batchelder v. Allied Stores Corp., 393 Mass. 819, 821-23 (1985).
“Like all civil rights statutes, §§11H and 11H are entitled to liberal construction. Accordingly, cases within the reason; although not within the letter, of a remedial statute are embraced by its provisions.” Redgrave v. Boston Symphony Orchestra, Inc., 399 Mass. 93, 99 (1987) (citations omitted). Yet, the Supreme Judicial Court has also recognized “that by the Civil Rights Act, the Legislature did not intend to create a vast constitutional [and statutory] tort ...” Freeman v. Planning Board of West Boylston, 419 Mass. 548, 565 (1995), cert. denied, 116 S.Ct. 337 (1995), quoting Bally v. Northeastern University, 403 Mass. 713, 718 (1989), which quotes Bell v. Mazza, 394 Mass. 176, 182 (1985) (internal quotation marks omitted). “[T]he insertion by the Legislature of the requirement of threats, intimidation or coercion was specifically intended to limit liability under the Act.” Freeman v. Planning Board of West Boylston, 419 Mass. at 565-66.
To prevail on a claim under the Act, the plaintiffs must prove that:
1. [their] exercise of enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth,
2. have been interfered with, or attempted to be interfered with, and
3. that the interference or attempted interference was by threats, intimidation or coercion.
Freeman v. Planning Board of West Boylston, 419 Mass. at 564.
It is not at all plain what civil rights Vonda contends any of the defendants interfered with, but it is crystal clear that there is no evidence of any threats, intimidation, or coercion by any of them. Moreover, as with Counts Four and Five, any such claim would be barred by the three-year statute of limitations unless it were filed by July 1997. Therefore, the defendants are also entitled to summary judgment as to Count Three.[2]

Count Two: Invasion of Privacy

In her complaint, Vondra alleges that the publication of the GAL Report constituted the invasion of privacy of which she complains. This theory of her cause of action cannot prevail because of the absence of any evidence that Held, Kaplan, Sotheby’s, Ward, or Kaloustian breached the order of confidentiality by providing a copy of the GAL Report to Tye or by assisting another to provide Tye'with a copy.
In her deposition, however, Vondra testified that she understood her invasion of privacy claim to focus on the search of her room in Mr. Bemays’ residence. This theory must meet the same fate as the theory articulated in her complaint because that search occurred in 1993, Vondra knew all about it by July 1994, and the limitations period to bring a claim based on that search expired by July 1997. Therefore, summary judgment must be granted on Count Two.

Count One: Defamation

The moving defendants are entitled to summary judgment on the defamation claim on at least two separate and independent grounds.
*283 First, the defamation claim was brought against the moving defendants long after the statute of limitations expired. Under G.L.c. 260, §4, “(a]ctions for . . . libel . . . shall be commenced only within three years next after the cause of action accrues.” To the extent that Vondra is complaining about statements made in the GAL Report, her libel claim, even with a generous application of the discoveiyrule, expired by July 1997, after she knew of these statements for three years.
Vondra, however, contends that her defamation claim is timely because it was brought within three years of the publication of Tye’s biography, where the allegedly libelous statements in the GAL Report were republished. Vondra relies on a footnote in the Supreme Judicial Court case of Flynn v. Associated Press, in which the Court declared:
‘The republisher of a defamatory statement ‘is subject to liability as if he had originally published it.’ ” Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 36 (1985), and sources cited. Any future republication of the false statements complained of in this action could form the basis for a new cause of action against the republisher.
401 Mass. 776, 780 n.5 (1988). This statement of law certainly means that a new cause of action for libel accrues as to this republication from the date of the republication, but that new cause of action accrues only against the republisher — here, the defendants Tye and Crown Publishing Company. The moving defendants did not republish the allegedly libelous information in the GAL Report; nor is there any evidence that they were responsible for Tye obtaining a copy of the Report. Therefore, they cannot be said to have republished the allegedly libelous statements in the Tye biography.
Vondra argues that, since Tye quoted from the GAL Report, a cause of action newly accrues upon the publication of Tye’s biography against those persons who provided the information in the GAL Report that Tye repeated. The flaw in this argument is that a new cause of action for libel accrues upon republication because the person choosing to republish has repeated a defamatoiy statement. The person the republisher happens to quote has neither said nor written anything new to injure the plaintiff nor has the person quoted herself repeated her statement. Rather, the republisher simply found an earlier statement and reprinted it. If the reprinting of earlier statements were enough to trigger a fresh three-year statute of limitations, the limitations period would offer no repose because a ten-year-old statement could be resurrected into a new cause of action without the person making the ten-year-old statement saying or doing anything to harm the plaintiff.
Second, since the Probate Court appointed Kaloustian as GAL and directed her to prepare a GAL Report, she was performing a quasi-judicial function in investigating and writing the GAL Report and is protected from defamation claims arising from that Report by the doctrine of absolute judicial immunity. LaLonde v. Eisner, 405 Mass. 207, 210-11 (1989). Since the defamation claims against Held, Kaplan, Sotheby’s, and Ward are premised on statements allegedly made to Kaloustian during the investigation she conducted in preparing her GAL Report for a pending judicial proceeding, these statements were made in the course of a quasi-judicial proceeding and must enjoy the same absolute privilege as statements made by witnesses during the course of trial. See Correllas v, Viveiros, 410 Mass. 314, 319-24 (1991). There can be little doubt that the ability of a GAL to prepare a report, especially in hotly contested cases, would be significantly impaired if the GAL herself could be sued for libel based on her findings, or if the witnesses she questioned risked a defamation suit if they provided information to the GAL.
ORDER
For the reasons stated above, the motions for summary judgment brought by the defendants Held, Kaplan, Sotheby’s, Ward, or Kaloustian are ALLOWED as to all claims in the complaint.[3]

iye cites both the GAL Report and an interview with Doris Held in 1996 as the source for this information.

Vondra in this count also claimed a violation of G.L.c. 93, §102, which grants all persons in the Commonwealth, regardless of their gender, race, creed, or national origin, the same rights enjoyed by white male citizens. Vondra has failed to articulate how any of the defendants have violated this provision of law.

This Court recognizes that these defendants also moved for sanctions under G.L.c. 231, §6F. That motion, however, may be brought only after a decision has been rendered by the Court as to the merits of the underlying complaint. With this grant of summary judgment to these defendants, that motion maybe renewed and a hearing requested, as required under §6F.