JOHN P. HARRINGTON *vs.* WILLIAM M. COSTELLO & another.[1]

No. 11-P-1209.

Norfolk. May 2, 2012. - November 27, 2012.

Present: CYPHER, TRAINOR, & SIKORA, JJ.

Further appellate review granted, 464 Mass. 1102 (2013).

*Libel and Slander. Limitations, Statute of.*

In a civil action, a Superior Court judge did not err in concluding that the
plaintiff's defamation claims were barred by the statute of limitations,
where the cause of action accrued when the plaintiff knew of the publica-
tion and resultant harm of the allegedly defamatory statements more than
three years before the action commenced, not when he subsequently
discovered the statements' fabrication; where a common-law privilege
could not toll the statute of limitations; and where, even if the defendants
were in a fiduciary relationship with the plaintiff or intended to defraud
him, they had not failed to disclose facts to him necessary to establish the
cause of action. [814-817] TRAINOR, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on
November 1, 2010.

A motion to dismiss was heard by *Renée P. Dupuis,* J.

*Frank L. McNamara, Jr.,* for the plaintiff.

*Ross A. Kimball* for the defendants.

CYPHER, J. The plaintiff, John P. Harrington, filed a complaint
in the Superior Court on November 1, 2010, containing two
counts of defamation, one against John A. Perry and the other
against William M. Costello. Harrington alleged that each
"published a false, disparaging, defamatory, and materially
misleading statement."

The defendants filed a motion to dismiss, alleging the
complaint was filed beyond the three-year statute of limitations
for defamation actions. After a hearing, a Superior Court judge
allowed the defendants' motion to dismiss on April 12, 2011.
We affirm.

---

[1]John A. Perry.

*Facts.* We summarize the allegations of fact presented in Harrington's complaint.

The plaintiff, Harrington, and the defendants, Costello and Perry, are Roman Catholic priests. During all relevant times, Harrington was assigned to St. Patrick's church in Falmouth, where Perry was the pastor. Costello was the pastor of St. Anthony's church in East Falmouth.

In January, 2005, Perry contacted Harrington to inform him that Costello had telephoned Perry to report that a parishioner, Patty Williams, had accused Harrington of "stalking" her son, a high school student, and wanted him (her son) transferred from St. Patrick's religious education program to St. Anthony's program. Before informing Harrington of the allegation, Perry, without verifying the accusation, contacted the two directors of religious education at St. Patrick's to determine whether Williams's son had withdrawn. He told the two directors, "[T]hat is the young man whose mother has accused Father Harrington of stalking." Perry acknowledged to Harrington that he had not talked directly to Williams. Harrington told him that the accusations were groundless and urged Perry to talk to Williams directly. About one week later, Perry reported that Williams told him that she never told Costello or anyone else that Harrington was stalking her son. Williams told Perry that she had talked with a coworker, Michael LeBrun, and not Costello, about her son's situation, but Perry withheld this information from Harrington.

A few days later, Perry and Harrington met with the two directors of religious education where Perry confirmed that he had talked to Williams, who denied making the accusation against Harrington. Costello admitted to Harrington that he was mistaken — that it was not Williams who made the accusation, but that it came from a coworker of Williams, a parishioner and friend of Costello. Costello refused to identify the coworker. Perry also refused to tell Harrington the name of the coworker.

After publication of the accusation by Costello and Perry, Harrington was subjected to incidents of harassment and ridicule.

In May, 2005, Harrington met with Bishop George Coleman of the Fall River Diocese and Perry.[2] Coleman affirmed that

[2] On May 12, 2005, Harrington wrote to Bishop Coleman describing his

Costello told Perry that Williams had accused Harrington of stalking her son and that Williams denied ever making such a statement. Coleman told Harrington that the name of the coworker would not be revealed. Coleman told Harrington that he should drop the whole matter.

Following that meeting, Coleman ordered Harrington to cease all exercise of clerical ministry and ordered him not to reside in or on diocesan property.

After learning the name of the coworker on November 6, 2007, Harrington met with him. The coworker, LeBrun, told him that he never had made any such allegation to Costello. In April, 2009, Perry confirmed to Harrington that LeBrun was the coworker whose identity had been withheld.

*Discussion.* The principles for review of motions to dismiss and application of the statute of limitations to defamation actions are well known and need not be restated in detail. See G. L. c. 260, § 4; *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635-636 (2008). Expanding on his assertion below that his cause of action against the defendants did not arise until November 6, 2007, when LeBrun told him that he had never made an allegation of stalking, Harrington argues on appeal that the statute of limitations was tolled by the discovery rule, common-law privilege, and a breach of fiduciary duty and fraudulent concealment by the defendants.

1. *The discovery rule.* Central to this case is the general rule that the cause of action in a defamation case accrues on the date of publication. *Flynn* v. *Associated Press*, 401 Mass. 776, 780 (1988). Here, the defamatory comments were published to third parties, the religious education directors, in January, 2005. On its face, then, Harrington's complaint should have been filed in 2008, unless he can show sufficient facts to take the case out of the statute of limitations. Harrington attempts to do so by invoking the discovery rule.

By relying on "the discovery rule to argue that his claim was

discussion of the charge of stalking with parishioners at masses on the weekend of April 17, 2005. Because neither Perry nor Costello would reveal the name of the individual who accused him, he asked parishioners to contact Perry "about [his] right to know the person's name in order that [he] might defend [his] innocence." He also enclosed copies of a letter to Coleman signed by over two hundred parishioners.

delayed due to an inability to recognize the cause of his injuries, [Harrington] bears the burden of 'proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge.' " *Koe* v. *Mercer*, 450 Mass. 97, 101 (2007), quoting from *Doe* v. *Creighton*, 439 Mass. 281, 283 (2003).

It is readily apparent that Harrington suffered injuries from Costello's communication to Perry and Perry's communication to the religious education directors. These injuries were consequential, as summarized in the margin,[3] and obviously well known to Harrington. They accrued no later than November, 2005, when he was terminated from his position at St. Patrick's church. At that time, Harrington had the requisite knowledge that the defendants published a false statement to a third party and that the statement caused him harm. *Phelan* v. *May Dept. Stores Co.*, 443 Mass. 52, 55-56 (2004). Moreover, he knew of Williams's denial, as communicated by Perry, and of the acknowledgment by Costello that the accusation came from Williams's coworker, whose name he refused to reveal. Well within the statute of limitations, Harrington could have filed suit. Harrington fails to show that he had "an actual lack of causal knowledge," or that the lack of knowledge was objectively reasonable. *Koe* v. *Mercer, supra* at 101. We discern no error in the judge's conclusion:

> "That [Harrington] chose not to bring a cause of action until he discovered that Costello was not merely repeating the statements that were so damaging, but had what appeared to be a much more sinister role in the entire transaction (if LeBrun's denials are in fact true) does not make the cause of action 'inherently unknowable.' It is the

[3]On October 24, 2005, Coleman wrote to Harrington noting that they had had several conversations in the past few months where Coleman had requested that Harrington seek a psychiatric evaluation. Coleman further noted that Harrington had been warned that if he continued to refuse Coleman's request, his assignment at St. Patrick's church would be terminated. The October 24 letter went on to terminate Harrington's assignment as of November 2, 2005. It was further requested that Harrington take up residence at the Priests' Hostel in Fall River. On November 30, 2006, Coleman notified Harrington that because of reports of his "public behavior on various occasions and in various places," the faculties of the diocese were withdrawn and he was "to cease all exercise of clerical ministry and to refrain from residing in any building or any property of the Diocese."

publication of the false statement that causes harm that is actionable, not that the publisher of the false statement was aware that it was false."

Nevertheless, Harrington advances arguments seeking to revive this action. He claims that his discovery of LeBrun's denial indicates that the defendants fabricated the stalking allegation and that it is the discovery of this harm that started the running of the statute of limitations and gave him a viable action.[4]

While Harrington acknowledges that the judge's decision "appears straight-forward and unassailable," he asserts that the facts of this case do not call "for a Procrustean application of the general limitations rule . . . or for rigid application (or rejection) of the so-called 'discovery rule.' " He asserts that missing from the judge's analysis are principally what he advances as theories of a common-law privilege attached to the stalking accusation and tolling of the statute of limitations as a result of the defendants' breach of fiduciary duty and fraudulent concealment.

2. *Tolling by common-law privilege.* The essence of this argument is that although Harrington knew that the stalking accusation was false, he had no independent evidence with which to challenge the defendants until he learned of LeBrun's denial. He asserts that he reasonably believed until then that the defendants were acting under a privilege and in accordance with their official positions. Moreover, he continues, their response to the stalking allegation "appeared to be . . . prudent" in light of "the Catholic Church's heightened sensitivity to the problem of clergy sexual abuse."

It appears that this argument was not raised in the trial court, and we consider it only to note that the plaintiff has not directed us to any authority for the argument. A privilege may provide immunity from suit; however, we know of no principle whereby a privilege would toll the statute of limitations.[5]

---

[4]Harrington did not amend his complaint to include any allegations against LeBrun.

[5]The record does not indicate any activities between the parties between November, 2006, and November 6, 2007, nor is there any information in the record explaining the long delay before Harrington learned LeBrun's name and the circumstances of his denial.

3. *Tolling by fiduciary relationship or fraud.* Harrington asserts that he trusted his colleagues and that they owed him a fiduciary obligation to disclose the identity of the accuser. The judge aptly observed that even assuming the parties "were in a fiduciary relationship or that the defendants intended to defraud [Harrington]," the rule that the statute of limitations may be tolled where a wrongdoer "keeps from the person injured knowledge of the facts giving rise to a cause of action and the means of acquiring knowledge of such facts," *Frank Cooke, Inc.* v. *Hurwitz,* 10 Mass. App. Ct. 99, 106 (1980), has no application here. The judge properly concluded that the defendants "did not keep [such facts] from [Harrington], because [Harrington] was well aware of all of the facts needed to establish his cause of action for defamation beginning in 2005."

*Judgment affirmed.*

TRAINOR, J. (dissenting). The majority correctly states that as a general rule, the cause of action in a defamation case accrues on the date of publication. *Flynn* v. *Associated Press,* 401 Mass. 776, 780 (1988). The majority then maintains that in relying on the discovery rule, the plaintiff, John P. Harrington, bears the burden of "proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge." *Koe* v. *Mercer,* 450 Mass. 97, 101 (2007), quoting from *Doe* v. *Creighton,* 439 Mass. 281, 283 (2003). Finally, the majority concludes that because Harrington was aware that he had been injured upon publication of the defamatory accusation by the defendants, William M. Costello and John A. Perry, he had the requisite knowledge that the defendants had published a false statement to a third party and that the statement caused him harm: "Well within the statute of limitations, Harrington could have filed suit." *Ante* at 815. Neither the motion judge nor the majority is clear as to exactly who would have been named the defendants in Harrington's suit at that time.[1] Because Harrington could not identify a defendant, I believe the statute of

---

[1]The judge concludes somewhat cryptically that "[i]t is the publication of the false statement that causes harm that is actionable, not that the publisher of the false statement was aware that it was false." This observation does not fairly represent the situation faced by Harrington.

limitations for Harrington's defamation claim only began to run when he discovered that Costello had authored the defamatory statement. We have not addressed this situation in our case law, and I therefore respectfully dissent.

At the time of the publication of the defamatory statement Harrington was misled into believing that Perry and Costello were protected by the common-law conditional privilege to republish the alleged stalking accusation. "Massachusetts courts have recognized that a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest." *Bratt* v. *International Bus. Machs. Corp.*, 392 Mass. 508, 512-513 (1984). In addition, Costello and Perry refused to tell Harrington the name of the author of the accusation. The reasonableness of Harrington's being misled, and of his reliance on the belief that a privilege existed as to both Costello and Perry, is based on the facts known to him at the time.

Perry was the pastor — the administrative head — of St. Patrick's church and, significantly, the Vicar General of the Fall River Diocese, a position second only to the Bishop. Costello was the pastor of St. Anthony's church. It was reasonable at the time for Harrington to believe that Perry and Costello were required and privileged to republish the accusation of stalking to each other and to the two directors of the religious education program. See *ibid.* The extent of this publication would not be considered excessive and therefore would not have abused and forfeited the privilege that Harrington reasonably thought existed for the benefit of Costello and Perry. See *Galvin* v. *New York, N.H. & H.R.R.*, 341 Mass. 293, 296-297 (1960). Both Costello and Perry refused to tell Harrington who made the statement. This refusal was later confirmed and endorsed by Bishop George Coleman of the Fall River Diocese. Each of these men had the power to refuse such information and also may have appeared to have had the right, if not the obligation, at the time, to withhold the information.[2] In any event, while Harrington was aware of the defamation, he could not identify its source. The two

---

[2]General Laws c. 233, § 20A, not only codifies the confessor-penitent privilege but also extends that privilege to communications between priests and those seeking their spiritual and pastoral advice.

people he could identify, he reasonably believed were protected by a privilege. In November, 2005, Harrington literally could not identify a defendant to bring suit against. The judge opined that, at this point in time, "[n]ot only were the facts giving rise to the cause of action inherently knowable, all facts necessary to make out a cause of action were known to [Harrington]." This conclusion, however, is not correct because while the cause of action was knowable, and was actually known, a defendant was not known and was, at the time, unknowable. The judge concluded that all Harrington had to do was inquire of Patty Williams. But that too is not correct because he was told by Perry and Coleman that she had not been the source of the accusation, and again they refused to reveal the source. Harrington spent nearly the next three years in the active search for the source of the accusation, suffering tremendous personal abuse and professional punishment.[3]

The majority is correct when observing that while a privilege might provide immunity from suit, there is no case in Massachusetts that states that the existence of a privilege would toll the statute of limitations. This, however, is not the question before us. We must determine if the statute of limitations is tolled when a plaintiff cannot, reasonably and in good faith, determine the identity of the defendant. The United States Court of Appeals for the First Circuit was confronted with a very similar situation some time ago but declined to rule on the question. See *Collins* v. *Nuzzo*, 244 F.3d 246, 253 (1st Cir. 2001) ("[T]his is a situation where a plaintiff has notice of an injury [defamation] and generally what was said but does not know for certain who made the defamatory statement. . . . In the end, we think it better to let the Massachusetts courts decide this issue"). The circumstances are obviously capable of repetition and should be addressed.

---

[3]During this time he almost immediately became a pariah in his parish and was the victim of extraordinary harassment and ridicule. The only support he received from Perry was an offer to be transferred to another parish. When he persisted in his efforts to learn the identity of the person who had defamed him, and refused Coleman's advice to drop the whole matter, he was terminated from his assignment to St. Patrick's church and was transferred to a priests' hostel in Fall River. A year later, Coleman withdrew his priestly faculties in the diocese and ordered him out of diocesan housing.

While there is Massachusetts case law, in nondefamation cases, that would argue for the application of the discovery rule to the situation we consider here, there is no Massachusetts case directly on point.[4] In Massachusetts, the statute of limitations is "tolled under the discovery rule when the factual basis for the cause of action is 'inherently unknowable' at the time of the injury." *Cohen* v. *State Street Bank & Trust Co.*, 72 Mass. App. Ct. 627, 637 (2008) (Trainor, J., concurring in part and dissenting in part), quoting from *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 206 (1990). "Under the Massachusetts discovery rule, the limitations period on a tort claim will not commence until a plaintiff is able to recognize *some causal connection between the defendant's actions and her injury*" (emphasis added). *Foisy* v. *Royal Maccabees Life Ins. Co.*, 356 F.3d 141, 147 (1st Cir. 2004).

"When, as here, the parties press different events as triggering accrual, the factual inquiry focuses on which was the first event reasonably likely to put the plaintiff on notice that *the defendant's conduct* had caused him injury. See *Eck* v. *Kellem*, 51 Mass. App. Ct. 850, 853 (2001). 'Notice here refers not to discovery of every fact necessary to prevail on the claim, but rather to discovery of the plaintiff's injury *as causally connected to the defendant's negligence.' International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. [215,] 218 [1990]." (Emphasis added.) *Symanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 371 (2002).

I believe that in this case, Harrington's cause of action did not accrue until he discovered that Costello had authored the defamatory statement. In fact, the defendants went to considerable lengths to conceal that fact from Harrington. It was not until November 6, 2007, when Harrington learned the identity

---

[4]Massachusetts courts have, however, held that "[t]he discovery rule does not apply to a public libel printed in a newspaper widely available to the public, including the plaintiff." *Flynn* v. *Associated Press*, 401 Mass. at 781. It has been almost universally held that the discovery rule and tolling do not apply to *widely published written statements.* See *Morgan* v. *Hustler Magazine, Inc.*, 653 F. Supp. 711, 717 (N.D. Ohio 1987); *Shively* v. *Bozanich*, 31 Cal. 4th 1230, 1252-1253 (2003) (collecting cases). These are also known as "mass media defendant" defamation cases, and they have little bearing on whether a slander should be tolled until discovery of the speaker.

of the individual who had initially been blamed for the defamation, and was convincingly informed by that individual that he had never made such an accusation to Costello, that Harrington knew who had authored the statement. It was only then that Harrington discovered that the statements made by Costello and Perry were not in fact privileged, but were maliciously fabricated by Costello. See *Retailers Commercial Agency, Inc., petitioner*, 342 Mass. 515, 520 (1961) (conditional privilege is forfeited by a showing of malice). Until that time it was reasonable for Harrington to believe that the act of "republishing" the statements by Costello and Perry was privileged. There was, therefore, no defendant that he could identify and the statute of limitations should not have run until he could identify a defendant. We do not know from the record whether Perry or Coleman knew that Costello had fabricated the stalking allegations.

It suffices to say that the question posed by this case has not been addressed in Massachusetts and has been acknowledged but left unresolved by the United States Court of Appeals for the First Circuit. I also do not think it necessary for Harrington to make any further argument because I believe the appropriate *and* final resolution to this question properly resides in a forum of final jurisdiction.